| 8 | 371 |
| 10 | 293 |

| 8 | 371 |
| 22 | 138 |
| 8 | 371 |
| 23 | 102 |

| 8 | 371 |
| 40 | 30 |
| e40 | 611 |

## DANIEL GAMER ET AL., APPELLANTS, *v.* JOHN H. GLENN ET AL., RESPONDENTS.

CIVIL PRACTICE — *Notice of motion for new trial.* — The appellants' notice of motion for a new trial designated the manner in which they proposed to make the motion as follows: "Upon the minutes of the court, the bills of exceptions now or hereafter on file in said cause, and a statement of the case hereafter to be prepared and served." It was objected that the said notice was insufficient, under sections 297 and 298, division 1, Compiled Statutes, in failing to show upon which one of the said grounds the appellants relied. *Held*, that said notice would have been objectionable had the grounds designated therein been stated in the alternative; but that an appellant is at liberty to rely upon one or more of the grounds for the motion, permitted by the statutes aforesaid, and that no injury could have resulted to the respondents from the three grounds aforesaid being stated conjunctively.

MINES AND MINERALS — *Notice of location of quartz lode — Immaterial error in description.* — In the case at bar, upon the trial, one of the witnesses for the plaintiffs testified that he was one of the locators of the Excelsior Lode Claim; that there was no such claim as the Tim Lode in its vicinity; that the Moulton Lode was four hundred or five hundred feet distant to the south; that the Goldsmith Lode was southwest of it, and separated by a wedge-shaped claim, the existence of which was unknown to him at the time of the location of the said Excelsior Claim. In other respects the testimony of the witness conformed, as to the description of the location of the Excelsior, with that as recited in the recorded notice of location thereof. After said witness had left the stand the appellants were allowed to introduce in evidence the notice of location of the Excelsior Claim, the description of the same therein being as follows: "Beginning at a large boulder at the west end of the Tim Lode; thence two hundred and forty feet to discovery shaft; thence one thousand two hundred and sixty feet west to the east side line of the Goldsmith Lode, and bounded on the south by the Moulton Lode, and on the north by an unknown claim, on the east by the Tim Lode, and on the west by the Goldsmith Lode, and running north of O'Neill's house one hundred feet, running in a southeasterly and northwesterly course." It was objected that the said notice did not contain a description of the claim, located with reference to a natural object or permanent monument, sufficient to identify it, and also that the description therein differed from that as given by the witness aforesaid. *Held*, that the references to the large boulder, the Goldsmith Lode, the Moulton Lode, and the house of O'Neill were sufficient to identify the claim with reference to a natural object or permanent monument. *Held, also*, that the law does not require a notice of location of a quartz lode to contain a description of the boundaries of the claim as they are marked on the ground, and that the discrepancy complained of was not sufficient to mislead as to the *locus* of the Excelsior Claim.

*Appeal from the Second Judicial District, Silver Bow County.*

The opinion states the facts.

*W. W. Dixon,* for Appellants.

Appellants claim that the court below erred in granting a new trial, because the notice of motion was insufficient, and not as required by law. The notice stated that the motion would be made " upon the minutes of the court, the bills of exceptions now or hereafter on file in the said cause, *and* a statement of the case hereafter to be prepared and served." The Code of Civil Procedure, section 297, page 135, Compiled Statutes of Montana, provides that the motion (for the causes mentioned in respondents' notice here) may be made at the option of the moving party, either upon the minutes of the court *or* a bill of exceptions *or* a statement of the case prepared. And the following section (298) provides that the notice of motion shall designate whether the motion will be made upon affidavits *or* the minutes of the court *or* a bill of exceptions *or* a statement of the case. These provisions, if they mean anything, require that the party moving select the form in which the motion will be made and give notice accordingly, not that he give notice of all and then elect which to adopt on the hearing. The motion was heard upon a bill of exceptions only. The point raised was that the "Excelsior Claim" of appellants was not properly described in the notice of location, and that the description in the notice of location was different from that given in the testimony of O'Neill, one of the locators, and that there was nothing in the notice by which the claim could be identified or located. This, appellants claim, was directly contrary to the decision of this court in the case of *Flavin* v. *Mattingly,* reported in 8 Mont. 242. This latter case was decided September 15, 1888, some months after the ruling of the court below on the motion for a new trial in the case at bar. Upon this case of *Flavin* v. *Mattingly, supra,* appellants confidently rely for a reversal of this case. In the Flavin case this court say that where the description in the notice is defective, it should be left to the jury with the other evidence in the case, etc. This was what was done in the Flavin case, and also in the case at bar, and the jury found that the description was sufficient within the law. The jury were properly instructed as

to what the law required to be stated in a location notice, and what was necessary to make a valid location of a mining claim.

*Knowles & Forbis*, for Respondents.

If the notice of motion can designate that more than one plan of procedure can be followed, then we maintain that all such grounds of motion may be designated, and that the moving party may follow all such modes, or may abandon any one or more of them, and proceed upon the remainder. By such procedure the opposing party cannot be misled, for he has had full notice that the motion will be made upon all the grounds designated, and if only one is pursued, he has as much notice that such a one will be pursued as if it had been relied upon only in the first instance, and the other grounds of the motion had never been designated at all. We believe our statute is an exact copy of the statute of California, and was taken from it. Under that statute a question arose very similar to the one presented in this case. There a party had presented a notice of motion for a new trial, designating that the motion would be made upon affidavits, and upon the minutes of the court and a bill of exceptions. Upon the trial of the motion the moving party did not use affidavits or the minutes of the court, and the opposing party objected on that ground to the consideration of the motion, but was overruled in his objection. (*Hart* v. *Kimball*, 72 Cal. 283.) We differ from counsel for the appellants in his statement that this case is precisely like the case of *Flavin* v. *Mattingly*, 8 Mont. 242. In the latter case the question arose upon the sufficiency of the description, and the court very properly held that that was a matter for the consideration of the jury. There, there was an indistinctness of description, and it would be hard to tell whether it was sufficient or not, and the court held that it was a question of fact to be submitted to the jury. In this case there is no question as to whether the claim is properly described; but it clearly appears from the evidence in the exceptions that there was an absolute misdescription of the location of the claim. We take it that questions of the sufficiency of the description in a location notice is like any other question of fact to be submitted to a jury. Where there is any evidence, the jury have the right to pass upon it; but where there is none, or absolutely

insufficient evidence, the courts will not permit a jury to find upon it. Under this view of the case, the jury could not make a location good, which was upon its face false, and if the jury should find it good, the courts ought to have the power to revise and set aside their findings. That is exactly what the court has done in this case, and we hold it acted properly. (See *Russell* v. *Chumasero*, 4 Mont. 309; *Gilpin Co. Min. Co.* v. *Drake*, 8 Colo. 586; *Garfield Min. & M. Co.* v. *Hammer*, 6 Mont. 53.)

McCONNELL, C. J. — Verdict in favor of the appellants; motion for a new trial sustained, and an appeal from the order granting it to this court. This is an action to quiet title, brought on an adverse claim of appellants, on the "Excelsior Lode," to respondents' application for United States patent on the "Argonaut Lode Mining Claim." The first point relied on by the appellants for a reversal of this case is that the "notice of motion is insufficient, and not as required by law." The notice recites that the motion would be made "upon the minutes of the court, the bills of exceptions now or hereafter on file in said cause, and a statement of the case hereafter to be prepared and served." The objection to this notice is that it states three grounds conjunctively upon which the motion will be predicated, when the Code of Civil Procedure, section 297, page 135, of the Compiled Statutes, provides that "when the application is made for a cause mentioned in the first, second, third and fourth subdivisions of the last section it must be made upon affidavits; for any other cause it may be made at the option of the moving party, either upon the minutes of the court, or a bill of exceptions, or a statement of the case prepared as hereinafter provided." It is insisted that the proper construction of this statute is that the appellant must elect at the time he gives his notice of motion for new trial which one of the several grounds mentioned in the statute he intends to rely on, and that he cannot rely on all of them taken together. And it is insisted that this view of the case is strengthened by the provisions of section 298, which is as follows, to wit: "The party intending to move for a new trial must, within ten days after the verdict of the jury, if the action was tried by a jury, or after notice of the decision of the court or referee, if the action was tried without

a jury, file with the clerk and serve upon the adverse party a notice of his intention, designating the grounds upon which the motion will be made, and whether the same will be made upon affidavits, or the minutes of the court, or a bill of exceptions, or a statement of the case." Particular stress is laid upon the use of the words "option of the moving party" and the disjunctive word "or," connecting the several grounds upon which the motion may be made. We do not think this construction tenable. While the appellant may select any one ground given by the statute, and rely upon it alone, he certainly is not precluded from relying upon two or more, or all of them, if in his judgment the necessities of his case require it. And if he sees fit to rely upon one ground and abandon the others, when he comes to file his motion for a new trial, he can then elect to do so. To notify the respondent that he intends to rely on all of them cannot prejudice his rights in any manner that we can see. If he were to put his notice in the alternative, and thus leave it uncertain which of the grounds he relied on, this would be objectionable. Our statute is a copy of the California statute. (See Deering's Ann. C. & S. of Cal. Code of Civil Procedure, § 657, et seq.) The Supreme Court of that State, in the case of *Hart* v. *Kimball*, 72 Cal. 284, have given the same construction to this statute that we have. In disposing of this question that court uses the following language: "The respondent contends that the appeal from the order first mentioned should not be considered, for the reason, as he alleges, that the notice of motion for a new trial specified that such motion should be made, not only on the minutes of the court, but also upon a bill of exceptions and a statement of the case, and that, therefore, the statement upon which the motion was heard by the trial court should have been disregarded, since the moving party relied upon that method of procedure, and did not file any affidavits or use the minutes of the court." We do not concur in this view of the law, for the respondents had full notice that all the statutory methods of procedure to obtain a new trial would be adopted by the appellants, and when they elected which of such methods they would pursue, such election was their privilege and did not prejudice in any way the rights of the respondents, the other methods being thereby abandoned. From the above it will be

seen that the precise point was involved in the above case which is involved in the case at bar.

2. The bill of exceptions contains the testimony of Charles O'Neill, and the notice of location of the "Excelsior Claim." The substance of O'Neill's testimony is that he was one of the locators of the "Excelsior Lode Claim"; that it lies north of the Moulton and Amy Silversmith Lodes, and south of the Silversmith; that he and his co-locator, Clark, found a vein of good gold and silver bearing rock, with well-defined walls; said vein was two and a half or three feet thick; they sunk a shaft seventeen feet deep on it; that they marked out the boundaries by driving stakes made of four by four or two by four lumber, one at each corner, and one in the middle of each end line; that said stakes were some two or three feet high above the snow, and were kept up while he lived on the claim; that they took a tape line and measured off the claim, fifteen hundred feet in length and six hundred feet in width, three hundred feet on each side of the lode, which ran from a southeast to a northwest course; that he started with his center east end stake at a large boulder; that the boulder is there yet; that he built a house on said claim, and lived on it for years; that the discovery shaft was some two hundred and fifty or three hundred feet west from the boulder, and his house some one hundred feet from the shaft; that he put up a notice at the discovery shaft; that when the "Amy Silversmith" removed its stakes it took in his house; that the "Moulton" is about four hundred or five hundred feet south of his south line; that the "Goldsmith Claim" is southwest of his claim; that there was a fraction in a wedge shape, tapering from two to one hundred feet in width, between his claim and the "Goldsmith," so that this claim did not touch his claim at all, as he thought when he located it, and that there is no such claim as the "Tim Lode." The appellant then introduced the following location notice: "Notice is hereby given that the undersigned have complied with the requirements of chapter 6 of title 32 of the Revised Statutes of the United States, and the local laws, rules and regulations, and customs of miners; have located fifteen hundred linear feet on the 'Excelsior Lode,' together with three hundred feet on each side, plain mining ground, situated in Summit Valley Mining District,

Silver Bow County, Montana Territory, and being more partic-
ularly described as follows, to wit: Beginning at a large boulder
at the west end of the 'Tim Lode'; thence two hundred and forty
feet to discovery shaft; thence one thousand two hundred and
sixty feet west to the east side line of the Goldsmith Lode, and
bounded on the south by the Moulton Lode, and on the north
by an unknown claim, on the east by the 'Tim Lode,' and on
the west by the Goldsmith Lode, and running north of O'Neill's
house one hundred feet, running in a southeasterly and north-
westerly course. Located February 23, 1881." Said notice
was properly verified. To the introduction of this notice the
respondents objected, "for the reason that the same did not con-
tain such a description of the claim located with reference to
some such natural object or permanent monument as would
identify the claim; and that the evidence of O'Neill shows that
the claim is not properly described in the location notice, but
that the description given in the notice and that in O'Neill's
testimony were altogether different, and that the description
given in the notice is altogether incorrect, and contains nothing
by which the claim can be identified." And the court, Mr.
Justice Galbraith presiding, overruled the motion and admitted
the record. To this the defendants excepted, and made their
motion for a new trial upon the foregoing grounds alone.

We have written so much as to what is necessary to constitute
a valid location of a mining claim, and what should be left to
the jury as a matter of fact to be found under proper instruc-
tions, and what are matters of law for the court, that we deem
it unnecessary to discuss these matters any further. We refer
to the cases of *Russell* v. *Chumasero*, 4 Mont. 309; *Garfield
Mining Co.* v. *Hammer*, 6 Mont. 53; *Upton* v. *Larkin*, 7 Mont.
449; *Flavin* v. *Mattingly*, 8 Mont. 242; and *O'Donnell* v. *Glenn*,
8 Mont. 248, in which these matters are fully discussed and
settled. Nothing is left for us to do now but to apply these
principles to the facts in each case as they arise, and determine
the rights of the parties thereto accordingly. The laws of the
United States require that the location must be distinctly marked
on the ground so that its boundaries can be readily traced. The
law does not require that these boundaries so marked on the
ground shall be put in the declaratory statement that goes on

record in the county recorder's office. The territorial statute, by which alone the declaratory statement is required, provides that it shall contain such a description as is required by the laws of the United States. And the laws of the United States require that "all records of mining claims shall contain the names of the locators, the date of the location, and such a description of claim or claims located by reference to some natural object or permanent monument as will identify the claim." The purpose of the record is to direct the inquirer to the place where the claim is located, and not to show its precise boundaries as marked upon the ground. It must contain enough, taken with these boundaries, to enable a person of reasonable intelligence to find the claim and trace its boundaries. (See the case of *Upton* v. *Larkin, supra.*) The testimony of O'Neill is undenied, and it certainly shows that a vein of mineral-bearing rock was discovered, and a portion of the surface of the ground embracing the vein of the requisite legal proportions was definitely laid off and clearly marked on the ground. A shaft was sunk seventeen feet in depth, a notice posted there, and a house had previously been built upon it, and was occupied for years by the locator. There is no pretense but that this was sufficient. But this is not enough. The law requires a declaratory statement to be made and recorded, and this statement must contain such a description of the claim by reference to some natural object or permanent monument as will identify it. Does it do this? We think it does. It contains the statement that the discoverers have located fifteen hundred linear feet on the "Excelsior Lode," together with three hundred feet on each side; and a more particular description of it is given as follows, to wit: "Beginning at a large boulder at the west end of the 'Tim Lode'; thence two hundred and forty feet to the discovery shaft; thence one thousand two hundred and sixty feet west to the east side line of the Goldsmith Lode, and bounded on the south by the Moulton Lode, on the west by the Goldsmith Lode, and running north of O'Neill's house one hundred feet, running in a southeasterly and northwesterly course." When we bear in mind that these calls are not locative but directory, it seems that they are amply sufficient, and are not obnoxious to the

objection that they describe an entirely different piece of ground from that described by O'Neill in his testimony. They both begin at a large boulder in the east line, and run to the discovery shaft, and the description in the declaratory statement gives a line which traverses the whole claim from the large boulder on the east to the Goldsmith Lode on the west. But suppose the west line of the claim as staked on the ground did not reach this lode by a few feet, through the mistake of the locator as to where the true boundary of that claim was at the time he made the location, not knowing that there was a wedge-shaped fraction between his claim and the Goldsmith Lode, would not an inquirer tracing this line from the large boulder a distance of fifteen hundred feet by the way of the shaft stop where he found the three stakes marking the west end line, and be certain that he had found the true boundary of the claim he was seeking? And suppose the Goldsmith Lode did lie southwest of his claim, instead of due west, this can make no difference. It lies in the general direction of west, and near a portion of his western boundaries at least.

Again, it is objected that the Moulton Claim lies some four hundred or five hundred feet south of the south line of his claim, when the declaratory statement calls for this claim as its southern boundary. But this is so far corrected by other calls that it cannot mislead any one. It describes the vein as running one hundred feet north of O'Neill's house. This fixes its location so that the measurement of three hundred feet would easily ascertain the south line as staked on the ground.

Again, it can make no difference that no "Tim Lode" ever existed on the east side of the claim. The large boulder may be in itself a natural object sufficient to identify the claim in that direction. Well-known patented claims have been held to be such natural objects as will identify a claim when properly referred to. (See the case of *Russell* v. *Chumasero, supra.*) This declaratory statement contains a reference to a large boulder, the Goldsmith Lode, the Moulton Lode, and the house of O'Neill, all directing the inquirer to the very ground located and staked off by O'Neill and Clark, and it seems to us to sufficiently identify it under the laws of the United States to make appellants' claim to the "Excelsior Lode" good. While the

precise boundaries contained in the declaratory statement are not in all respects identical with the lines staked off on the ground, they are so nearly so, and point out the *locus* so clearly, that we think the claim is sufficiently identified. We think, then, that the declaratory statement was properly admitted.

The learned justice who granted the motion for a new trial seems to have done it, because, in his opinion, there was such a variance between the description contained in the declaratory statement and that given by O'Neill, that the former should not have been admitted in evidence. In this we think he erred. The whole matter was submitted to a jury under full and correct instructions, which are not objected to by either party, and they found for the appellants, and we see no reason why their verdict should be disturbed.

The order made in the court below granting a new trial is reversed with costs, and the case remanded, with directions to the court below to enter up judgment according to the verdict of the jury.

*Judgment reversed.*

BACH, J., and LIDDELL, J., concur.