STREPEY ET AL. V. STARK ET AL.

1. The objects and functions of an "additional" location certificate are peculiar; it differs from ordinary documentary muniments of title in that it is not a title, nor proof of title; nor does it constitute, or of itself establish, the possessory right in issue, and to which it relates. It is, when recorded, notice to the world of the facts required by statute to be therein set forth, and it is also one of the steps requisite, under the statute, to constitute a mining location.

2. Four certain things are to be done in order to perfect a mining location: First, the sinking of a discovery shaft; second, the posting of a discovery notice; third, the marking of the surface boundaries of the claim; fourth, making and recording a location certificate.

3. Where the right of possession is founded upon an alleged compliance with the law relating to a valid location, all the necessary steps therefor, aside from the making and recording of the location certificate, must, when contested, be established by proof outside of such certificate. And such certificate, when recorded, is competent evidence to show the date of location, the description of the premises, and that the statute requiring such certificate to be made out and recorded has been complied with.

4. The admissibility of an "additional" location certificate is not affected by the circumstance that it was filed subsequent to the commencement of the suit. It is not evidence of any after-acquired right or interest, but merely evidence relating to a right of possession which must have been acquired prior to the filing of such certificate, and prior to the acquisition of any intervening right of the adverse party.

5. The rule in ejectment, that the plaintiff must recover, if at all, upon the strength of his own title, and not upon the weakness of that of his adversary, is *held* not to apply to possessory actions for mining claims, where neither party has, strictly speaking, any legal title, but where the prior possession of the plaintiff is pitted against the present possession of the defendant.

6. Under location statutes, to constitute such possession as will give the locator a right to mineral lands before patent issues, neither residence on the premises, nor continuous actual occupation, nor that kind of possession denominated *possessio pedis*, is required.

*Appeal from District Court of Chaffee County.*

THE facts are stated in the opinion.

Messrs. HARTENSTEIN and SINDGLER, for appellants.

Messrs. RHETT and HOBSON, for appellees.

STONE, J.    This is a contest between two sets of claim-
ants for the possession of a certain mining claim, which
appellees claim as the " Little Belle " lode and appellants
as the " Negro " lode.    Appellees, the plaintiffs below,
alleged right of possession by virtue of discovery, prior
possession, location, and compliance with the mining laws
relating thereto.    Appellants, as defendants, merely de-
nied in their answer the several allegations of the plaint-
iffs' complaint.

The ground of defense upon the trial was, chiefly, that
appellees had failed to comply with the law in not doing
sufficient work on the claim, previous to appellants' pos-
session, to entitle them to hold it.    Appellees established
their discovery of mineral on the ground as original loca-
tors in June, 1879, and their witnesses testified that a
discovery shaft was sunk that year to a depth of over ten
feet; that a location was made in accordance with law in
July, and a certificate thereof filed in September of that
year.    That when they went to resume work on the mine
the next year, appellants were in possession.    The testi-
mony of appellants was that they first came upon the
ground in June, 1880, and found a small cut or excava-
tion, not more than four or five feet deep, exposing a lit-
tle mineral, and that the only stake they found was an
old one at this excavation, containing the name of one
of the appellees and the date 1875; that they went to
work in the same excavation and sunk to the depth of
about fifteen feet; took out mineral, and located the
claim by the name of the Negro lode, and filed location
certificate in August following.    The ground claimed by
each side is shown to be practically, if not identically,
the same, and the appellants seem to have claimed and
located, or rather relocated, the mine, and asserted right
thereto, on the ground that the discoverers and former
occupants had failed to comply with the law in respect
to the necessary work and staking, and had therefore

either abandoned the claim or forfeited their right thereto, if they ever had acquired any right at all.

The verdict and judgment below were in favor of the plaintiffs, upon the third trial of the case, and appellants seek to have the judgment reversed because the verdict, as they allege, is contrary to the weight of evidence; that improper evidence was admitted on the trial; that proper instructions prayed were erroneously refused by the court, and that the jury were improperly influenced by remarks made by the judge, pending their deliberations, for the purpose of inducing them to agree upon a verdict.

Upon the matter of the admission of evidence which is assigned for error, the principal objection, as argued by counsel for appellants, appears to be made to the admission of appellees' amended certificate of location.

Both parties had made and recorded amended location certificates. The original location certificate of appellees was filed for record September 20, 1879, and their amended certificate on June 16, 1881.

The original certificate of appellants was filed August 30, 1880, and their amended certificate September 26, 1881.

The original and amended certificates of appellees were offered in evidence together, and, over the objection of appellants, were admitted, with the following remarks, in the nature of instructions by the court to the jury, to wit:

"Upon a proper identification of certificates they will be admitted in evidence, and the jury will be instructed that the first certificate is in itself void, and it confers upon the plaintiffs no title; that if they find from the evidence that before the amended certificate was filed for record, defendants acquired rights in the premises, or an interest in the premises, then they shall disregard the second certificate; but if they find that defendants acquired no such interest, then the second certificate will

relate back, under the law, to the plaintiffs' (location), and will confer upon plaintiffs the rights which would have been acquired had the first been a proper location certificate."

Before the close of the evidence on behalf of appellees, the court ordered their original location certificate withdrawn, giving the reason therefor in the following words, to wit: "On a little reflection, I state this before plaintiffs close their case: I have concluded that the amended location certificate performs all the offices that the original could, and therefore I am going to withdraw it from the jury, and leave the amended certificate before the jury, with a proper instruction."

The original location certificate of appellants was also held void and excluded, while their amended certificate was admitted in evidence.

The objection made by appellants to the admission in evidence of appellees' amended location certificate is put upon the ground that this certificate was not filed for record until after the commencement of the suit; and in support of this objection counsel invoke the rule that a plaintiff in ejectment must stand or fall on the right he had when he commenced his action, and cannot make or strengthen his case by any after-acquired right or title. The question here raised is one of importance in this class of cases, and one that, so far as we can ascertain, has not before been passed upon by the court of last resort, so that we are left to determine it without the aid of adjudged precedent; but we think the rule contended for by appellants' counsel, as above stated, is inapplicable to a case like this.

The question rests chiefly, if not solely, upon what we are to consider as the nature, purpose and functions of such location certificate. Its object and functions are peculiar; it differs from ordinary documentary muniments of title in that it is not a title nor proof of title, nor does it constitute, or of itself establish, the possess-

ory right in issue, and to which it relates.    It is purely
a creature of the statute, and, under the evident legis-
lative intent, its purpose and functions are twofold.
When duly recorded, it becomes notice to the world of
the facts therein set forth, namely, a description of the
premises claimed, and by whom and when located, in
order to secure the discoverer or claimant against others
seeking to locate the same ground; and is thus construct-
ive notice of the claimant's possession.    In addition to
this purpose which it is to serve, it would seem that, by
statute, such certificate is made one of the steps requisite
to constitute a perfected mining location.

Under the law, four certain things are to be done in
order to perfect a location:    *First*, the sinking of a dis-
covery shaft upon the lode ten feet in depth, or deeper if
necessary to disclose mineral in place; *second*, the post-
ing of a notice at the place of discovery, giving the name
of the lode, the name of the locator, and the date of
discovery; *third*, marking the surface boundaries of the
claim by posts, in the manner pointed out by statute;
and *fourth*, making and recording a location certificate
containing the name and description of the lode, the
name of the locator, and the date of location.    It will be
noted that the statute does not require that the certificate
shall contain a statement that the discovery shaft has
been sunk the requisite depth, or so as to disclose min-
eral, nor that the discovery notice has been posted, or
boundary stakes set, which things are made the chief re-
quirements on the part of a locator in order "to locate
his claim," before filing the location certificate, although
it is usual to include such statement in the certificate,
when the performance of such work, posting and staking,
is a pre-existing fact; and it has been held by the United
States circuit court of Colorado, that though the locator
of a mining claim may not have sunk his shaft to the
discovery of mineral in place prior to filing his location
certificate, yet if he shall thereafter so sink the shaft and

disclose the lode, he will hold as against all who had not theretofore acquired an interest in the lode, the same as if he had uncovered it before the survey and filing the certificate, such discovery relating back to the location *Zollars & H. C. C. M. Co. v. Evans*, 2 McCrary, 39.

Where the right of possession is founded upon an alleged compliance with the law relating to a valid location, all the necessary steps therefor, aside from the making and recording of the location certificate, must, when contested, be established by proof outside of such certificate; the record of the certificate being proof itself of its own performance as one of such steps, and in regular order the last step, in perfecting the location. And the certificate, when recorded, is certainly competent evidence, *prima facie*, of all which the statute requires such certificate to contain, and which are therein sufficiently set forth. And even when the certificate, for any of the reasons set forth in the statute, is deemed "void," it has been held admissible, in connection with a valid amended certificate correcting the defects of the original. *Van Zandt v. Argentine M. Co.* 2 McCrary, 159.

In support of this holding two principal reasons may be mentioned: *First*, the original certificate showing the date of location and record, although fatally defective in matter of description or otherwise, may well be considered as an element tending to show good faith on the part of the locator in attempting to comply with the law in making his location; *second*, the introduction of such original together with the amended, or, as it is termed in the statute, "additional" certificate, may offer a means of comparison in respect to description and surface boundary of the premises located, whether the first is identical with that described in the additional certificate, or whether it embraces the precise ground of any portion thereof claimed by either of the contesting parties otherwise than according to such original location.

The section of the statute under which the right to

file an amended or additional location certificate is given is as follows:

" If at any time the locator of any mining claim heretofore or hereafter located, or his assigns, shall apprehend that his original certificate was defective, erroneous, or that the requirements of the law had not been complied with before filing, or shall be desirous of changing his surface boundaries, or of taking in any part of an overlapping claim which has been abandoned, or in case the original certificate was made prior to the passage of this law, and he shall be desirous of securing the benefits of this act, such locator or his assigns may file an additional certificate, subject to the provisions of this act. *Provided*, that such relocation does not interfere with the existing rights of others at the time of such relocation; and no such relocation or other record thereof shall preclude the claimant or claimants from proving any such title or titles as he or they may have held under previous location."

The purpose of this additional certificate appears to be sufficiently expressed by the language of the act. It cannot create a right of possession or location in the premises claimed under the first location, which did not exist prior to the filing of such additional certificate; it can confer no additional right, and is therefore evidence of none, as against any intervening or pre-existing right of another. It follows that, except as against such intervening rights, an additional certificate serves the same purpose, in its admission as evidence, as that of an original location certificate, and will relate back to the first location.

The evident intent of the statute is that the additional certificate shall operate to cure defects in the original, and thereby to put the locator, where no other rights have intervened, in the same position that he would have occupied if no such defect had occurred. Such intent is in accord with the principle of all curative provisions of

law.   Without such result, this provision of the statute
would be ineffectual to confer any additional or other
benefit than the provisions of section 2411 (General Stat-
utes), for an entire relocation of a mine, as for an aban-
doned claim.

From the foregoing view of the purpose and functions
of a location certificate, original and additional, it does
not appear that the admissibility as evidence of such ad·
ditional certificate, is affected by the circumstance that
it was filed subsequent to the commencement of the suit,
since it is not evidence of any after-acquired right or
interest, but merely evidence relating to a right of pos-
session which must have been acquired prior to the filing
of such certificate, and prior to the acquisition of any
intervening right of the controverting party.

Counsel for appellants argue that it is illogical and erro-
neous to hold that the amended certificate can relate back
to the original, if the original be void; for if void, it is dead,
and the same as if it had never existed; but we are not so
holding.  What we say is, not that the second certificate re-
lates to the first in the sense in which the term relation is
employed to express a well known legal doctrine, but that
it relates back to a right of location accruing by virtue
of the prerequisite acts of discovery, prior possession,
excavation, posting, marking boundaries, and an at-
tempted compliance with the law respecting the filing of
a location certificate.

It is further to be observed that the rule in ejectment,
that the plaintiff must recover, if at all, on the strength
of his own title, and not upon the weakness of that of
his adversary, is held not to apply to possessory ac-
tions for mining claims, where neither party has, strictly
speaking, any legal title, but when the prior possession
of plaintiff is pitted against the present possession of
the defendant.   "Practically, the real question involved
in all such cases is: Which, as against the other, has the

better right to mine the land in question?" *Richardson v. McNulty et al.* 24 Cal. 339.

Each party must prove his claim to the premises in dispute, and the better right must prevail. *Lebanon M. Co. v. Con. Rep. M. Co.* 6 Col. 371; *Golden Fleece Co. v. Cable Co.* 12 Nevada, 312.

The right to mineral lands, before a patent issues from the government, rests in possession of the claimant. To constitute such possession as will give this right, under location statutes, neither residence on the premises, nor continuous actual occupation, nor that kind of possession for which appellants' counsel contend, denominated *possessio pedis*, is required. *English v. Johnson*, 17 Cal. 108.

The right of possession is the sole issue in the case at bar.

The appellees established their prior right by proof of discovery, prior possession, sinking a discovery shaft, disclosing mineral in place, posting the proper notice, marking the boundaries, and attempting to complete the location by filing a location certificate. These acts were all done the year previous to the appellants' taking possession of the same premises, and attempting its relocation under another name. The original location certificate of appellees was recorded September 20, 1879, and their amended certificate June 16, 1881. The original certificate of appellants was recorded August 30, 1880, and their amended one September 26, 1881. It will thus be seen that the appellees were prior in possession, and that their two location certificates were respectively prior to those of appellants. The original certificate of each party was held fatally defective, and the amended certificates of both parties were recorded subsequent to the commencement of the action.

There was no error in receiving in evidence the original location certificate of appellees. If there was error

in afterwards withdrawing it, of this the appellants cannot complain, since the only possible effect of such withdrawal was to the advantage of the complaining party and the prejudice of the other side.

The error of the court, if in this case it was such, in rejecting the original certificate of appellants, was also without prejudice, for the reason that appellees, by proof of prior possession and location, having established their right of possession at the time of appellants' entry, such subsequent entry and relocation by appellants, in the absence of abandonment, forfeiture, or otherwise intervening loss of right by appellees, conferred upon appellants no right as against appellees, and so their location certificates, being both subsequent, respectively, in time to the corresponding ones of appellees, related to no superior right, and hence, while admissible in evidence, counted for nothing in appellants' favor.

The appellees' priority of possession and seniority of location certificates are undisputed; the issue was the right of possession; under this issue, the appellants, who, by their answer, simply denied this right in the appellees, contested the same on the ground of an alleged want of compliance with the law on the part of appellees in the amount of work done in sinking the discovery shaft, posting discovery notice, and in the necessary marking of the surface boundaries of the claim. If, then, the appellees established, by the testimony, their compliance with law in respect to these points in dispute, their prior right of location and superior right of possession thereby followed, and so continued to exist unimpaired down to the time of trial in this case. It is, therefore, clear that neither the original nor amended certificate of appellants could avail for any purpose as evidence, unless the appellants first established a superior right of location; for, as we have before stated, a location certificate can confer no right of location of itself, and

can relate only to a right of location acquired previous to its filing.

We are not now contending against the admissibility of these certificates as evidence; we concede that the original, in connection with the amended one, might properly have gone to the jury; that, in certain cases, error might be well assigned upon the exclusion of such certificate; but we are here giving reasons for our holding that, if there was possible error in the rejection of the original certificate in this instance, it was error without prejudice to the party complaining, and, therefore, no sufficient cause for reversal.

The instructions given by the court correctly stated the law applicable to the facts in controversy, and covered all the points in issue in the case. There was, therefore, no error in not giving the instructions prayed by appellants, and which were refused by the court.

The testimony as to the amount of work done by appellees on the mine, previous to the relocation by appellants, is conflicting between the witnesses on the one side and those upon the other; but as the jury were the sole judges of the credibility of the witnesses and the weight of testimony, we cannot say that the verdict was contrary to the weight of such testimony, and, under the frequent decisions of this court, there is no cause for reversal on this ground. The jury were warranted in finding upon the testimony, as they evidently did, that the right of possession was in appellees, by reason of discovery, priority of possession, and a prior location, such as to give them the better right to the premises in controversy.

The remarks of the district judge to the jury, when they were called in before the court, after being out for some time pending their deliberations upon their verdict, were, we think, not calculated to produce a hasty, indeliberate or unfairly considered verdict. These re-

marks were of considerable length, and we do not consider it necessary to quote them in full, but, in substance, they reminded the jury of the disastrous effects to litigants and to the public of failures, on the part of juries, to agree upon verdicts at the end of protracted litigation; that this was the third trial of the case in hand, and that the efforts of the court would be to secure a verdict in this instance, if within the bounds of possibility. To prevent any possible undue influence or misconception of the object of these remarks, the court added in conclusion:

"These remarks, gentlemen, are not made for the purpose of influencing your judgment or biasing your minds. They are not made for the purpose of coercing you or influencing you, except so far as they impress on your minds the importance of making every honest and conscientious endeavor possible to arrive at a verdict, and you are not to pay any attention to them save as they may serve that purpose.

"I don't suppose there is a single man upon the jury who is acting in any other than a conscientious manner. I don't think there is a man among you who would do so under the oath you have taken; but it is possible that further consideration of the evidence, and further discussion, may lead you to arrive at a conscientious agreement. This is all I have to say. I am going to ask you to retire with the bailiff and further consider of your verdict."

While a judge is not warranted in saying anything to the jury to influence their decision or indicate to them what their verdict should be (except upon the hypotheses laid down in the written instructions submitted), or even to unduly hasten a verdict, we can see nothing in the remarks made to the jury here that could have operated viciously; and one must presume that the judge had some good reason for addressing them as he did, to im-

press the importance of arriving at an agreement upon a verdict if possible, upon the third trial of the case.

The other assignments of error arising upon the evidence do not appear to be well taken, and are not of sufficient importance to call for discussion.

The judgment will be affirmed.

*Affirmed.*