Points Decided.

(March 14, 1908.)

BISMARK MOUNTAIN GOLD MINING COMPANY, Appellant, v. NORTH SUNBEAM GOLD CO., Respondent.

[95 Pac. 14.]

MINES AND MINING CLAIMS—LOCATION THEREOF—LOCATION CERTIFICATES OR NOTICES—SUFFICIENCY OF—REFERENCE TO NATURAL LANDMARKS AND PERMANENT OBJECT—SUFFICIENCY OF—NOTICE TO SUBSEQUENT LOCATORS—ADMISSION OF NOTICES IN EVIDENCE—ACTUAL NOTICE—AMENDED NOTICE OF LOCATION—DEFECTIVE NOTICE—VOIDABLE—UNAPPROPRIATED PUBLIC LAND—PRIMA FACIE EVIDENCE OF—ANNUAL ASSESSMENT WORK, PROOF OF—FOREIGN CORPORATION—ALLEGATION OF COMPLAINT—DENIAL ON INFORMATION OR BELIEF—DECLARATION OF GRANTOR—WHEN ADMISSIBLE IN EVIDENCE.

1. Under the provisions of sec. 3102, Rev. Stat. Idaho, and of sec. 2324, Rev. Stat. U. S. (U. S. Comp. Stats. 1901, p. 1426), requiring notices of location to contain such a description of the locality of the claim by reference to natural landmarks or permanent objects as to render the situation of the same reasonably certain from the letter of the notice itself, *held,* that the description of the Jesse James and Little Giant mining claims, as stated in said notices, is sufficient under the provisions of said statutes and the facts of this case.

2. The object of the law, in requiring the location of mining claims to be made with reference to some natural object or permanent monument, is for the purpose of directing attention, in a general way, to the vicinity or locality in which the mining claim was to be found.

3. Where it appears that the location of a mining claim is made in good faith, the court will not hold the locator to a very strict compliance with the law in respect to his location notice; and, if by any reasonable construction, in view of the surrounding circumstances, the language employed in the description will impart notice to subsequent locators, it is sufficient.

4. The natural objects or permanent monuments referred to in said statutes may be on the ground located, or off, as the case may be.

5. It is the settled doctrine in this state that location notices should receive a liberal construction, to the end of upholding locations made in good faith.

6. The object and purpose of a location notice is to give notice to subsequent locators; and, if there be a defect in the notice, and

the subsequent locator has actual notice of the prior location, he will be bound thereby, at least so far as defects are concerned.

7. Sec. 5 of an act concerning mines and mining claims, approved February 14, 1899 (Laws 1899, p. 238), provides that amended locations may be made. Such amended locations, where they do not interfere with existing rights, relate back to the date of the original locations.

8. It is the policy of the law, in allowing such amended locations, not to avoid a location for defects in the notice, but rather to give the locator an opportunity to correct his certificate or notice whenever defects are found in it.

9. The location notice or certificate, when recorded, is *prima facie* evidence of all the facts the statute requires it to contain, and which are therein sufficiently set forth; and the affidavit of the locator attached to the notice, setting forth the fact that the ground was unoccupied mineral land of the United States at the time of his location, when introduced in evidence in an adverse suit, makes a *prima facie* case of such fact. Such notices are *prima facie* evidence of all the facts required by the statute to be stated therein which are, in fact, sufficiently stated therein.

10. *Held,* that the evidence in this case is sufficient to make a *prima facie* case as to the fact of posting the location notices on said claims.

11. *Held,* that the affidavits of labor, introduced in evidence, showing that the annual assessment work was done on said claims in the years 1904 and 1905, make a *prima facie* case on that question.

12. If a mistake is made in such notice, it may be corrected by oral evidence. The fact as to whether the work was done is the main question, and not its method of proof.

13. Where it is alleged in the complaint that the plaintiff is a foreign corporation, and that it has complied with the requirements of the constitution and laws of this state relative to foreign corporations doing business in this state, a denial of its compliance on information and belief is not a sufficient denial to raise an issue.

14. Prior to the passage of the act of 1903, in regard to foreign corporations, neither the constitution nor the statute rendered a conveyance of real estate to a noncomplying corporation void.

15. This is an adverse action to protect the title to real estate alleged to have been acquired before said act of 1903 went into effect, and not an action to enforce any contract made with the defendant corporation.

16. The declarations of a grantor of real estate, in regard thereto and to mining claims adjoining, may be admitted in evidence, in an action concerning the title to such claims, provided the declarations

were made prior to the time such declarant sold his interest in such real estate, but not after.

(Syllabus by the court.)

APPEAL from District Court of Sixth Judicial District for Custer County. Hon. James M. Stevens, Judge.

Action by the Bismark Mountain Gold Mining Company against the North Sunbeam Gold Company. Judgment for defendant, and plaintiff appeals. *Reversed and remanded.*

Nathan H. Clark, for Appellant.

"If by any reasonable construction, in view of the surrounding circumstances, the language employed in the description will impart notice to subsequent locators, it is sufficient." (*Farmington Gold Min. Co. v. Rhymney Gold & Copper Co.*, 20 Utah, 363, 77 Am. St. Rep. 913, 58 Pac. 832; *Morrison v. Regan*, 8 Ida. 291, 67 Pac. 955; *Flavin v. Mattingly*, 8 Mont. 242, 19 Pac. 384; *Londonderry Min. Co. v. United Gold Mines Co.*, 38 Colo. 480, 88 Pac. 455; *Hammer v. Garfield Min. Co.*, 130 U. S. 291, 9 Sup. Ct. 548, 32 L. ed. 964.)

It has never been the policy of the law to avoid a location for defects in the record, but rather to give the locator an opportunity to correct his record whenever defects may be found. (*McEvoy v. Hyman*, 25 Fed. 596; *Morrison v. Regan*, 8 Ida. 291, 67 Pac. 955; *Frisholm v. Fitzgerald*, 25 Colo. 290, 53 Pac. 1109.)

Even when the certificate for any of the reasons set forth in the statutes is deemed void, it has been held admissible in evidence with a valid amended certificate correcting the defects in the original. (*Strepey v. Stark*, 7 Colo. 614, 5 Pac. 111; *Kinney v. Lundy* (Ariz.), 89 Pac. 496; *Van Zandt v. Argentine Min. Co.*, 8 Fed. 725, 2 McCrary, 159; *Butte Con. Min. Co. v. Barker*, 35 Mont. 327, 89 Pac. 302, 90 Pac. 177.)

"The location certificate where recorded is *prima facie* evidence of all that the statute requires it to contain, and which are therein sufficiently set forth." (*Strepey v. Stark, supra;*

*O'Riley v. Campbell*, 116 U. S. 418, 6 Sup. Ct. 421, 29 L. ed. 669; *Garfield Mill Co. v. Hammer*, 6 Mont. 53, 8 Pac. 153; *Hammer v. Garfield etc. Co.*, 130 U. S. 291, 9 Sup. Ct. 548, 32 L. ed. 964; *Goldberg v. Bruschi*, 146 Cal. 708, 81 Pac. 23.)

To raise the question that plaintiff corporation has not complied with the corporation laws of the state of Idaho, it must have been specially pleaded by answer or demurrer by defendant, and again if raised by the pleadings herein at all, it is completely disposed of by the opinion on rehearing in the case of *Katz v. Herrick*, 12 Ida. 1, 86 Pac. 873, wherein this court approved the case of *Fritts v. Palmer*, 132 U. S. 282, 10 Sup. Ct. 93, 33 L. ed. 317.

M. A. Brown, for Respondent.

The Utah supreme court, in a case analogous to the one at bar, has held that a notice of location such as the ones of the Jesse James and Little Giant are invalid and of no force or effect. (*Darger v. LeSieur*, 8 Utah, 160, 30 Pac. 363.)

In the case of *Morrison v. Regan*, this court did not undertake to overrule the doctrine laid down in the case of *Brown v. Levan*, 4 Ida. 794, 46 Pac. 661, but seems to make a distinction based upon the fact that in the latter case no tie was made to a natural object or permanent monument, while in the Morrison-Regan case a tie was in fact made.

The rule of law is that, where a compliance by a foreign corporation with the laws of another state where it is undertaking to transact business is a condition precedent, it must be alleged by said corporation and proved. (19 Cyc. 1318.)

A nonsuit in an adverse case makes the plaintiff a stranger to the action, and prevents him from further litigating the claim of the defendant. (*Lavagnino v. Uhlig*, 26 Utah, 1, 99 Am. St. Rep. 808, 71 Pac. 1046; *Moffatt v. Blue River G. E. Co.*, 33 Colo. 142, 80 Pac. 139.)

SULLIVAN, J.—This is an action, brought in support of an adverse claim, to quiet plaintiff's title to two certain mining claims, located and known as the "Jesse James" and "Little Giant," situated on Bismark Mountain, in Yankee

Fork mining district, Custer county, Idaho. From the location notice it appears that the Jesse James claim was located on January 1, 1898, by E. L. Ayers and Louis Roy, and the Little Giant on April 16, 1898, by E. L. Ayers. On November 18, 1899, said Ayers and Roy conveyed to George P. Mulcahy the said mining claims. Thereafter, on March 6, 1900, said Mulcahy conveyed said mining claims to one F. E. Langford, and thereafter, on December 29, 1900, said Langford conveyed said mining claims to the appellant, the Bismark Gold Mining Company, which is a corporation organized and existing under the laws of the state of Washington. The respondent, the North Sunbeam Gold Mining Company, is a corporation organized under the laws of the state of Idaho. It appears that Fred Kenenbly and E. E. Stettler located the Exchequer lode mining claim on June 11, 1903, which claim is located on said Bismark Mountain, and is tied, by notice of location, to the said Jesse James mining claim "on the west," when, as a matter of fact, it is on the east. This would indicate that the locators of the Exchequer recognized the Jesse James mining claim, although they made a mistake as to the point of compass. Thereafter, said Exchequer mining claim was transferred to the respondent corporation. It further appears that one W. J. Oster on April 27, 1906, located the Matilda, the North Sunbeam, and Squaw Hitch lode mining claims, all of which were located on said Bismark Mountain. Thereafter said Oster conveyed said three mining claims to the respondent corporation. It appears from the plat contained in the record that the Matilda, North Sunbeam and Squaw Hitch claims overlap, and include all of said Little Giant claim in connection with other land; that the North Sunbeam and Squaw Hitch also lap over and onto a portion of the Jesse James claim. It also appears that the Exchequer laps over and onto the Jesse James. After obtaining title to the said Exchequer, Matilda, North Sunbeam and Squaw Hitch, the North Sunbeam Company made application for a patent to those four claims, and this suit was brought by the appellant for the purpose of protecting what-

ever interests the appellant, the Bismark Company, had in and to said Little Giant and Jesse James mining claims.

It appears that, during the years 1900, 1901, and 1902, the Bismark Company expended nearly $30,000 in improving and developing the said Little Giant and Jesse James claims; most of the work being done on the latter. It ran over 1,400 feet of tunnels, and erected dwellings and buildings of various kinds on said premises; after said development work was stopped, it appears that the Bismark company performed the annual assessment on each of said claims up to the time of the commencement of this suit. It appears from the record that mineral-bearing rock was discovered in place on said claims, and that said claims were properly staked, as required by law, and that the ground included within their boundaries was an unappropriated part of the public domain at the date of their location. During the trial, among other evidence was introduced the original location notices of said claims, also amended location notice thereof. When the appellant had finished putting in its evidence and rested, the defendant made a motion to strike out the original and all amended certificates of location of the Jesse James and Little Giant mining claims, based on a number of different grounds, the main one being that said notices or certificates of location did not contain any reference to any natural object or permanent monument, so as to render the situation and location of said claims reasonably certain from the letter of the notice itself, as required by the provisions of sec. 3102, Rev. Stat. Idaho, 1887, and sec. 2324, Rev. Stat. U. S. (U. S. Comp. Stats. 1901, p. 1426). Said location notices are as follows:

"Notice is hereby given that we, the undersigned citizens of the United States, conforming to mining laws thereof and the state of Idaho and the local rules, regulations, and customs, have this day located and do claim 1,500 linear feet in length by 600 feet in width, the same being 300 feet on each side of location stake together with all dips, spurs and angles and all other veins or lodes, the top or apex of which lies within said boundaries; this claim shall be known as the 'Jesse James Quartz Mining Claim' and is situated on Bismark

Mountain, Yankee Fork mining district, county of Custer, state of Idaho, and is bounded and described as follows: Commencing at this stake and notice and running S. E. 300 feet to S. E. side line, thence N. E. 600 feet to N. E. corner stake, thence N. W. 600 feet to N. W. corner stake, thence S. W. 600 feet to N. W. side-line stake, thence S. W. 900 feet to S. W. corner stake, thence S. E. 600 feet to S. E. corner stake, thence N. E. 900 feet to place of beginning. Located this 1st day of January, 1898.

"E. L. AYERS,
"LOUIS ROY,
"Locators."

"Notice is hereby given that I, the undersigned, having complied with the requirements of chapter 6, tit. 32, secs. 2318-2352, Rev. Stat. U. S. (U. S. Comp. Stats. 1901, pp. 1423-1441), and of the laws of Idaho state, relating to the location of mining claims and all local customs, laws, and regulations, have located and do claim 1,500 linear feet along this lode or vein of quartz, by three hundred (300) feet in width on each side of the middle of the lode or vein, making 600 feet in width. The claim so located is hereby named the Little Giant Quartz Claim and is situated in the Yankee Fork mining district, Custer county, Idaho state, and is described as follows: Commencing at this stake and notice, which is situated about center of claim and running N. E. 750 ft. to center and stake, thence 300 ft. N. W. to N. W. corner stake, thence 1,500 ft. S. W. to S. W. corner stake, thence S. E. 600 ft. to S. E. corner stake, thence N. E. 1,500 ft. to N. E. corner stake, thence N. W. 300 ft. to place of beginning, situated on Bismark Mountain.

"E. L. AYERS, Locator.

"Located this 16th day of April, 1898."

It will be observed from the location certificate of the Jesse James that the locators claimed 1,500 feet in length by 600 feet in width. It is also stated in said notice that said claim shall be known as the "Jesse James Quartz Mining Claim," and is situated on Bismark Mountain, Yankee Fork mining district, Custer county, state of Idaho, and "is bounded and described as follows." Here follows an accu-

rate tracing of the boundaries of the several lines and corner and side-line stakes, as will be observed from the location notice above set forth.   The location notice of the Little Giant claim, after reciting the facts usually recited in such a notice, states that the locator claims 1,500 feet along that lode or vein by 300 feet in width on each side of the middle thereof, and that said claim was named the Little Giant quartz claim, and is situated in Yankee Fork mining district, Custer county, state of Idaho, and is described as follows: "Commencing at this stake and notice which is situated about center of claim and running N. E. 750 ft. to center end stake, thence 300 ft. N. W. to N. W. corner stake, thence 1,500 ft. S. W. to S. W. corner stake, thence S. E. 600 ft. to S. E. corner stake, thence N. E. 1,500 ft. to N. E. corner stake, thence N. W. 300 ft. to place of beginning, situated on Bismark Mountain."   And to each of such notices is attached the affidavit of E. L. Ayers, one of the locators, which affidavits substantially conform to the affidavit required by sec. 3104, Rev. Stat., as amended by Laws 1895, p. 29.   The provisions of sec. 3102, Rev. Stat. Idaho, and of sec. 2324, Rev. Stat. U. S., so far as requiring the notice of location to contain the date of the location, the name of the locators, and the description of the claim located by reference to some natural object or permanent monument as to render the situation of such claim reasonably certain from the letter of the notice, are substantially the same.

While there has been some diversity of opinion in some of the states as to the definiteness and certainty required by the provisions of said section, the more recent decisions are more liberal in the construction of said provisions; and we think the correct rule is stated in *Farmington Gold Mining Co. v. Rhymney Gold & Copper Co.,* 20 Utah, 363, 77 Am. St. Rep. 913, 58 Pac. 832, where it is said: "If by any reasonable construction, in view of the surrounding circumstances, the language employed in the description will impart notice to subsequent locators, it is sufficient."   That case was cited with approval by this court in *Morrison v. Regan,* 8 Ida. 291, 67 Pac. 955.   Whether the notice and description of the claim were sufficient to apprise other prospectors of its precise

location is a question of fact and not of law. (*Eilers v. Boat-man,* 111 U. S. 356, 4 Sup. Ct. 432, 28 L. ed. 454.) In *Dillon v. Bayliss,* 11 Mont. 171, 27 Pac. 725, it was held that, when the court cannot say from the inspection of the notice that the description is an impossible or uncertain one, it may be admitted in evidence; but it is not conclusive, and may be subjected to the attacks of its adversary. In each of said notices it is recited as follows: "Commencing at this stake and notice," etc., thus referring to a stake, and it is also stated in the notice of the Little Giant claim that said stake is situated about the center of the claim. The notices describe each of said claims as being situated on Bismark Mountain, in Yankee Fork mining district. A deputy mineral surveyor of that region testified that said Bismark Mountain is a small mountain; that it could be covered by ten or twelve mining claims. Another witness testified that said mountain is small; that it is a well-known object around there in the Yankee Fork district; that it is known among prospectors there everywhere. Another that he had been acquainted with it since 1898; that it was well known. Another witness testified that Bismark Mountain is well known to every prospector from Challis through; that it is a small mountain, and on the east side of the slope from the apex to the base is about 2,100 to 2,200 feet. Another testified that Bismark Mountain has been known for years; that it is from 2,000 to 2,500 feet on one side, and from 500 to 1,200 on the other; that it is very precipitous for 500 feet, and then slopes gently; that it was on the apex of this mountain that the Jesse James was located. Another testified "that Bismark Mountain is a well-known mountain in that country to all prospectors." Another that Bismark Mountain was a well-known object; that there was quite a long rock on top; "that it is rather sharp, and that the Jesse James is situated right on top."

Thus it is clearly shown that said Bismark Mountain was a small mountain, and well known to prospectors in the Yankee Fork mining district. It is well recognized that the ties of mining claims to some natural object or permanent monument are not and were not intended to be as accurate and cor-

rect as they would be if tied by a competent surveyor. If that were true, very few, if any, of many hundreds of mining claims, located in good faith by prospectors and miners, would be held valid. It was held in *Flavin v. Mattingly,* 8 Mont. 242, 19 Pac. 384, as follows: "The object of the law, in requiring the location to be made in reference to some natural object or permanent monument, is not very apparent, unless it was for the main purpose of directing attention in a general way, to the vicinity or locality in which the location was to be found." And in *Farmington Gold M. Co. v. Rhymney G. & C. Co., supra,* the court said: "With just how much accuracy the description of a mining claim, in reference to natural objects or permanent monuments, must be stated in the notice of location is not set forth in the statute; and where, as in this case, the location was evidently made in good faith, we are not disposed to hold the locator to a very strict compliance with the law in respect to his location notice. If by any reasonable construction, in view of the surrounding circumstances, the language employed in the description will impart notice to subsequent locators, it is sufficient."

Said provisions of the statute were designed to secure a description, so that the mining claim could be readily ascertained. (See *Hammer v. Garfield Mining Co.,* 130 U. S. 291, 9 Sup. Ct. 548, 32 L. ed. 964; *Bennett v. Harkrader,* 158 U. S. 441, 15 Sup. Ct. 863, 39 L. ed. 1046.) The natural objects or permanent monuments referred to are not required to be on the ground located, although they may be; and the natural object may be any fixed natural object, and such permanent monument may consist of a prominent post or stake firmly planted in the ground, or of a shaft sunk in the ground. (*North Noonday Min. Co. v. Orient Min. Co.* (C. C.), 1 Fed. 533; *Jackson v. Dines,* 13 Colo. 90, 21 Pac. 918.) And it was held in *Hansen v. Fletcher,* 10 Utah, 271, 37 Pac. 480, that a prospect hole, rock monument, or stakes are, within the meaning of the law permanent monuments. It is the well-settled doctrine of all of the later decisions that location notices and records should receive a liberal construction, to the end of upholding a location made in good faith. In *Londonderry M.*

*Co. v. United G. M. Co.*, 38 Colo. 480, 88 Pac. 455, where the court was considering the sufficiency of a location notice, it is said: "Every case where this question is raised must therefore depend upon its own circumstances. As previously stated, the purpose of such location certificate is to give notice to subsequent locators; and, if by reasonable construction the language descriptive of the situs of a claim, aided or unaided by testimony, *aliunde*, will do so, it is sufficient in this respect. In other words, the object of requiring a reference to a natural object or permanent monument is to furnish means by which to identify the claim, and whatever reference will accomplish this object satisfies the law."

It appears from the evidence that said Jesse James and Little Giant mining claims were located very prominently on said Bismark Mountain, the former on the very top, and that the appellant company had expended large sums of money during the years 1900, 1901, and 1902 in developing them, and had erected dwelling-houses, bunkhouses, and other buildings in connection therewith; that the most of the work had been done on the Jesse James claim. Something over 1,400 feet of tunnel had been run. With that condition existing W. J. Oster, who located said Matilda, North Sunbeam, and Squaw Hitch mining claims on April 27, 1906, testified that he had been in the mining business since 1883, and that he had been on Bismark Mountain since 1903, and was acquainted with those premises. It does not seem possible that a man could have been on that little mountain for three years without knowing of said Jesse James and Little Giant mining claims, the former of which is located on the very top of said mountain, and on which claims nearly $30,000 had been expended in developing them. He testified as follows: "I knew at time [1903] of the existence of two stakes that were reputed to be the easterly end stakes of the Jesse James; one of them was at the southwest corner of the Exchequer as staked." Those facts appearing, every reasonable presumption that can be drawn therefrom should be in favor of his knowing of said locations; and his grantees should not be permitted to take advantage of any minor defects in the location

notices of said mining claims.   If Oster had actual notice of the location and boundaries of said claims, he nor his grantees will be permitted to take advantage of some technical defect in the location notice, where it appears that said claims were located in good faith.   Of course, if it be shown that the appellant company failed to do its annual assessment work upon said claims, then the knowledge of a subsequent locator of the fact of the former location of said claims would not affect the subsequent locator's right or privilege to locate the same or part of the same ground.   We think the court erred in striking out said location notice.   In the case at bar the statement in the location notices that said mining claims were located on Bismark Mountain, and the proof *aliunde* showing that said mountain was a small, well-known mountain in Custer county, and the fact of the large expenditure of money thereon prior to the location of the other mining claims referred to in this case, and the fact that the other locators knew of said mining claims prior to making their locations, taking into consideration all of those facts, we conclude that said notices of location sufficiently identify said claims by reference to a permanent monument or fixed object, within the requirements of the provisions of said statute.   The sufficiency of each notice of location depends upon the facts and circumstances surrounding it, and will be liberally construed in the light of such facts and circumstances, when it appears that the locations have been made in good faith.

The next question raised is in regard to the court striking out the amended certificates of location.   The evidence shows that, after the respondent's grantors had attempted to locate the ground in question and had applied for patent therefor, and prior to the time of the commencement of this action, the appellant corporation made and recorded amended certificates of location on said Jesse James and Little Giant claims, in which amended certificates descriptions were made from plats of actual surveys of said claims, and said claims were tied to United States mineral monument No. 1, by course, distance, and magnetic variation.   Said amended certificates were received in evidence with the original certificates, and were later

stricken out on motion. That action of the court is assigned as error.

This court had under consideration in *Morrison v. Regan,* 8 Ida. 291, 67 Pac. 955, the provisions of sec. 5 of an act entitled "An act to define the manner of locating lodes, quartz and placer claims. . . . ." (Sess. Laws, 1899, p. 238.) That section provides, in effect, that if at any time the locator of a mining claim, or his assigns, shall apprehend that his original certificate was defective, erroneous, or that the requirements of the law had not been complied with before filing, etc., he may file an additional certificate, subject to the conditions of said act, provided that such amended location does not interfere with the existing rights of others at such time as the amendment is made. It was held in that case that such amended location notice related back to the date of the original location. Since we have held that the court erred in striking out the location notice, it follows that it erred in striking out said amended certificates of location. Of course, if said amended certificates of amended location took in ground not formerly covered by the original notice and location, which ground had been located prior to the filing of such amended location notices, such ground could not be included in such amended location certificates. In the case of *McEvoy v. Hyman* (C. C.), 25 Fed. 596, the court had under consideration an amended location certificate, and held that the first record of a mining claim is usually, if not always, imperfect, and that it is the policy of the law to give the locator an opportunity to correct his record when defects are found therein; and, when it is so corrected, the amendment takes effect, with the original certificate of location, as of the date of such original certificate. It would appear from that decision that the location certificate therein considered stated that said mining claim was situated on "Aspen Mountain." This was held a sufficient reference. The original location certificates involved in this suit are similar in that respect; for they state that said Jesse James and Little Giant claims are situated on "Bismark Mountain." In the decision of that case, Judge Hallett said: "Under the law as it is at present,

a full, complete, and unimpeachable certificate cannot be made without the aid of a surveyor and the best instruments; and, with such aids, the surveyors often disagree, and time and labor are required to decide between them. Of course it is often, and perhaps generally, impracticable to obtain the services of a surveyor in making a location; and the miner must depend upon his own skill and judgment. In such effort he usually fails. Indeed, it may be said as to the course of his lines he is always in error; and the natural object and permanent monument, required by sec. 2324 of the Revised Statutes of the United States (U. S. Comp. Stat. 1901, p. 1426), are entirely beyond his grasp. He does not know what they are, or how to refer to them. Every one who is at all familiar with mining locations knows that, in practice, the first record must usually, if not always, be imperfect. Recognizing these difficulties, it has never been the policy of the law to avoid a location for defects in the record, but rather to give the locator an opportunity to correct his record whenever defects may be found in it." (See, also, *Frisholm v. Fitzgerald,* 25 Colo. 290, 53 Pac. 1109; *Strepey v. Stark,* 7 Colo. 614, 5 Pac. 11.) The last above cited decisions are from the state of Colorado. In *Morrison v. Regan, supra,* referring to the last-cited decisions from Colorado, the court said: "This court is in accord with the rule laid down in those decisions upon the question under consideration here. If in making the amended certificate of location it included land not included in the original location, and interfered with existing rights as to such land, the amended location would not relate back to the date of the original location, so far as the recently included land is concerned." (*Butte C. M. Co. v. Barker,* 35 Mont. 327, 89 Pac. 302, 90 Pac. 177.)

Said motion for nonsuit was also based on the ground that the plaintiff's evidence did not show that the premises located as the Jesse James and Little Giant was unappropriated public domain of the United States at the time the grantors of the appellant made said locations. It appears that both of said grantors were dead, and could not be produced as witnesses on the trial. One of the locators swore to and signed the

affidavits required by law to be attached to such location notices. Said affidavits were introduced with said notice, and said locator stated under oath therein as follows: "That the ground and claim therein described or any part thereof has not, to the best of my knowledge and belief, been heretofore located, according to the laws of the United States or the state of Idaho, and if so located, the same has been abandoned or forfeited. . . . . " The law requires that one of the locators named in the notice of location must make and subscribe an affidavit "in writing on or attached to the notice," containing the facts above enumerated, among others; and we think such affidavit is *prima facie* evidence in this class of cases of the facts therein stated. If this were not the correct rule, in many cases where the locators have disappeared or died no proof could be made whatever, and valuable rights would be lost without any fault of the locators or their assigns. In *Strepey v. Stark, supra,* in considering a similar question, the court said: "The location certificate, when recorded, is *prima facie* evidence of all the statute requires it to contain, and which are therein sufficiently set forth." (*O'Reilly v. Campbell,* 116 U. S. 418, 6 Sup. Ct. 421, 29 L. ed. 669; *Garfield M. & M. Co. v. Hammer,* 6 Mont. 53, 8 Pac. 153, 130 U. S. 291, 9 Sup. Ct. 548, 32 L. ed. 964.) In *Goldberg v. Bruschi,* 146 Cal. 708, 81 Pac. 23, the court said: "In a suit to quiet title to mining land, when plaintiff made his proof of citizenship and of discovery of gold-bearing quartz, and had shown a location according to the requirements of the law, he established his case *prima facie;* and it was not necessary for him to make further proof that the land was unoccupied mineral land of the United States." Location certificates or notices are *prima facie* evidence of all the facts required to be stated therein by the statute, in so far as it contains those facts. It is contended that the proof of posting the location notices at the discovery of each of said claims is not sufficient. After an examination of the evidence we think it is sufficient to make a *prima facie* case of the fact of such posting, and also that it sufficiently appears that the notices posted were like those recorded and introduced in evidence.

It is also contended that the evidence does not show that the assessment work was done for the years 1904 and 1905. Affidavits of labor were filed in the proper office and introduced in evidence, showing that the annual assessment work on each of said claims was done in said years. The affidavit for the assessment work done in 1904 was made by one Cross, and he, in effect, swears that $200 worth of work was done on said Jesse James and Little Giant claims, at the expense of the Bismark Mining Company. The affidavit of proof of labor for 1905 was made by one Castro, and he therein swears that $100 worth of work was done upon each of said claims in the year 1905, at the expense of H. E. Foster, "owner of said claims." There was a mistake in said notice as to the name of the owner of said claims. It appears from the record that H. E. Forester was president of the Bismark Company, and it appears that a mistake was made in said proof of labor in stating that said work was done at the expense of "H. E. Foster," instead of "Forester." Forester evidently paid for the assessment work, for the year 1905, for the appellant company, he being its president. The main question on this point is: Was the work done at the expense of the appellant? If, in fact, it was, that may be shown by any competent evidence.

Under the provisions of sec. 2332, Rev. Stat. U. S. (U. S. Comp. Stats. 1901, p. 1433), it is provided that, where locators or their grantors have held and worked their claims for a period equal to the time prescribed by the statute of limitations for mining claims, in the state or territory where the same may exist, evidence of such possession and working of the claims for such period shall be sufficient to establish a right to a patent thereto, in the absence of any adverse claim. In considering the provisions of that section the supreme court of Colorado, in *Cleary v. Skiffich,* 28 Colo. 362, 89 Am. St. Rep. 207, 65 Pac. 59, held that said statute was not available in an action brought in support of an adverse claim, except that it might be in such action that proof of such possession would be sufficient upon which to presume that all steps necessary to effect a location of the claim adversed had been taken; and it has been held that, where possession of a mining claim was

continued for the period covered by the state statute of limitations before the adverse right exists, it is equivalent to a location under the laws of Congress. (*Altoona Q. M. Co. v. Integral Q. M. Co.,* 114 Cal. 105, 45 Pac. 1047. See, also, *Belk v. Meagher,* 104 U. S. 279, 420, 26 L. ed. 735; *Four Hundred and Twenty-Nine Co. v. Bullion M. Co.,* 3 Saw. 634, Fed. Cas. No. 4989.) It will be observed that both Congress and the courts have endeavored to protect the rights of locators and their assigns where locations have been made and held in good faith, and courts have given a liberal construction to the mining laws and locations made under them with a view of doing justice to the prospector and miner who have acted in good faith.

It is next contended that the appellant has failed to show that it, being a foreign corporation, had complied with the laws of this state so as to entitle it to do business in the state. It is alleged in the complaint that the appellant corporation was duly organized under the laws of the state of Washington, and, as such corporation, had complied with the requirements of the constitution and laws of this state relative to foreign corporations doing business in the state. This allegation was denied, on information and belief, by the answer. In *Valley Lumber & Mfg. Co. v. Driessel,* 13 Ida. 662, 93 Pac. 765, this court held that the fact as to whether a foreign corporation had complied with the constitution and law in that regard was a matter of record, and a denial thereof on information and belief was not a sufficient denial. There being no sufficient denial of the allegation as to whether the appellant corporation had complied with the constitution and law so as to enable it to transact business in this state, there was no issue raised by such denial.

It appears that the appellant corporation procured whatever title it had to the mining claims in question in 1900, and prior to the amendment of sec. 2653, Rev. Stat., by the act of 1903 (Laws 1903, p. 49), there was nothing in the constitution of this state or the statutes rendering a conveyance of real estate to a noncomplying corporation void. Therefore the conveyance of said mining claims to the appellant corpora-

tion was valid at the date of said conveyance, and was not made void by the amendment of said sec. 2653 in 1903. This is an action in support of an adverse claim, and not an action to enforce a contract against the respondent corporation; but it is an action to protect the title to real estate acquired before said act of 1903 went into effect. The appellant corporation in this adverse suit is attempting to protect its own title against the assault on it by the respondent corporation, each claiming to have obtained title through different and adverse locators. (*Fritts v. Palmer,* 132 U. S. 282, 10 Sup. Ct. 93, 33 L. ed. 317; *Reynolds v. Crawfordsville Bank,* 112 U. S. 412, 5 Sup. Ct. 213, 28 L. ed. 736.)

It is next contended that the court erred in not allowing the witness Winwood to state the conversation which he had with Kenenbly, one of the locators of the Exchequer mine, as to the Little Giant stakes. Kenenbly thereafter conveyed said Exchequer claim to the respondent corporation, and it is contended that, he being a grantor of the respondent, his declaration as to the stakes of an adjoining claim, to wit, the Little Giant, was admissible in evidence in this suit. That would depend altogether upon the fact whether those declarations were made prior to the time that Kenenbly conveyed said Exchequer claim to the respondent corporation. If such conversation was had before Kenenbly conveyed said claim to the respondent, the conversation should have been admitted in evidence; otherwise, not.

There are other errors assigned, but none that will arise on a retrial of this case, and it will therefore not be necessary for us to pass upon them. It is suggested by counsel for appellant that, on the record as presented, in case of a reversal of the judgment, this court would be fully justified in directing judgment to be entered for the appellant. There are several cogent reasons why this cannot be done. While we hold that the plaintiff made a *prima facie* case and was improperly nonsuited, the respondent had not put in any evidence on its behalf, which it would have had a right to do had the court not granted a nonsuit.

The judgment is reversed, a new trial granted, and the cause remanded for further proceedings, with costs in favor of the appellant.

Ailshie, C. J., and Stewart, J., concur.